# COMMON POLICY DECLARATIONS

**POLICY NO.**   GL   359-64-60 RA

**RENEWAL OF:**   NEW

1. NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH, PA.

2. AMERICAN HOME ASSURANCE COMPANY

3. THE INSURANCE COMPANY OF THE
   STATE OF PENNSYLVANIA

MEMBERS OF THE
AMERICAN INTERNATIONAL GROUP, INC
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y.

COVERAGE IS PROVIDED IN THE
COMPANY DESIGNATED BY NUMBER
| 1 |
A STOCK INSURANCE COMPANY
(HEREIN CALLED THE COMPANY)

**PRODUCER NO:** 01233
AON RISK SERVICES, INC. OF SOU
707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES        CA  90017

**NAMED INSURED**   HYUNDAI MOTOR AMERICA INC

**MAILING ADDRESS**   10550 TALBERT AVE
FOUNTAIN VALLEY    CA  92708-0000

**POLICY PERIOD: From**        02/19/99        **To**        02/19/00        **At**
**12:01 A.M. Standard Time at your mailing address shown above**

**BUSINESS DESCRIPTION**   CAR DEALERSHIP

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT

| | PREMIUM |
|---|---|
| Boiler and Machinery Coverage Part | $   NOT COVERED |
| Commercial Auto Coverage Part | $   NOT COVERED |
| Commercial Crime Coverage Part | $   NOT COVERED |
| Commercial General Liability Coverage Part | $   40,000 |
| Commercial Inland Marine Coverage Part | $   NOT COVERED |
| Commercial Property Coverage Part | $   NOT COVERED |
| Farm Coverage Part | $   NOT COVERED |
| **TOTAL  $** | **40,000** |

Premium shown is payable: $        40,000   at inception.

Forms applicable to all Coverage Parts:        **SEE ATTACHED SCHEDULE.**
(Show numbers)

COUNTERSIGNED _____   BY _____
(Date)                        (Authorized Signature)

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by
state law, this policy shall not be valid unless countersigned by our authorized representative.

*Elizabeth M. Tuck*
Secretary
National Union Fire Insurance Company of Pittsburgh PA.
American Home Assurance Company
The Insurance Company Of The

**EXHIBIT   3**

*J. P. Cassoris*
President
National Union Fire Insurance
Company of Pittsburgh of the

190

# FORMS SCHEDULE

EFFECTIVE DATE: 02/19/99

NAMED INSURED:  HYUNDAI MOTOR AMERICA INC

POLICY NO: 359-64-60

| | |
|---|---|
| ILO017 (1198) | COMMON POLICY CONDITIONS |
| ILO003 (1185) | CALCULATION OF PREMIUM |
| CGO001 (0196) | COMM GEN'L LIAB COV FORM |
| CGO212 (1185) | CANCELLATION BY US |
| CG2104 (1185) | EXCL-PRODUCTS COMPL OPERS HAZ |
| CG2147 (1093) | EMPL. RELATED PRACTICES EXCL |
| CG2149 (0798) | TOTAL POLLUTION EXCLUSION |
| CG2150 (0989) | AMEND LIQUOR LIAB EXCL |
| CG2404 (1093) | WAIVER OF TRANS RIGHTS OF RECOV |
| CG2504 (1185) | AMEND-AGG LMTS OF INS-PER LOC |
| CG9901 (1185) | MOTOR VEHICLE LAWS |
| ILO021 (1194) | NUCLEAR ENERGY LIAB EXCL (BROAD FORM) |
| ILO270 (0897) | CA CHANGES-CANC/NONRENEW |
| S42833 (0885) | ASBESTOS EXCLUSION |
| S45782 (0587) | RADIOACTIVE MATTER EXCLUSION |
| S59783 (0294) | EMPLOYEE BENEFITS LIABILITY |
| S61944 (0295) | BROAD FORM NAMED INSURED |
| S62132 (0395) | UNINTENTIONAL ERRORS AND OMISSIONS |
| S64006 (1195) | FELLOW EMPLOYEE EXCLUSION DELETED |
| Y70622 (0598) | DATE RECOGNITION ENDT - CGL |
| Y70631 (0598) | DATE RECOGNITION ENDT-EMPLOYEE BENEFITS |
| S61712 (1294) | ADD'L INSD-WHERE REQ UNDR CNTRCT/AGRMNT |
| S62133 (0395) | AMENDMNT OF DUTIES, OCC, OFFNSE, CL/SUIT |
| CG2010 (1185) | OWNERS, LESSEES, CONTR. |
| CG2011 (1185) | MANAGERS OR LESSORS PR PREMISES |
| CG2028 (1185) | ADD;L INSD-LESSOR OF LEASED EQUIP. |
| CG2010 (1185) | OWNERS. LESSEES , CONTR |
| CG2011 (1185) | MANAGERS OR LESSORS OF PREMISES |
| CG2028 (1185) | LEASED OF LEASED EQUIPMENT |
| CG2116 (1185) | EXCL-DESIGNATED PROFF SERVICES |
| CG2243 (1185) | EXCL-ENG, ARH OR SUR PROFF LIAB. |
| CG2144 (1185) | LMT OF COV TO DESIG PREM OR PROJ |
| S58332 (0793) | TOTAL LEAD EXCLUSION |
| S65322 (1196) | SEC & FINANCIAL INT EXCL |
| S61712 (1294) | ADD'L INSD-WHERE REQ UNDR CNTRCT/AGMT |
| S62133 (0395) | AMENDMENT OF DUTIES, OCC,OFFNSE, CL/SUIT |

*Duplicate listing*

*Y0?00? YOK LETTER*

EXHIBIT  3                    191

**ENDORSEMENT #002**

This endorsement, effective  12:01 A.M          02/19/99          forms a part of

Policy No. GL 359-64-60  RA  issued to          HYUNDAI MOTOR AMERICA

by   .NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

In consideration of the premium charged, it is hereby agreed that the following endorsements are deleted from the policy effective 02/19/99:

   70622  (5/98)  Date Recognition Endorsement — Commercial General Liability
   70631  (5/98)  Date Recognition Endorsement — Employee Benefits Liability

All other terms and conditions remain unchanged.

_____
                                         Authorized Representative

**EXHIBIT   3**

192

ENDORSEMENT #001

This endorsement, effective  12:01 A.M      02/19/99      forms a part of

Policy No. GL 359-64-60  RA  issued to      HUNDAI MOTOR AMERICA

by  .NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

In consideration of the premium charged, it is hereby agreed that the Named Insured as set forth in the Declaration Page is amended to read as follow:

### HYUNDAI  MOTOR AMERICA

It is further agreed that the Business Description is amended to read as Auto Importer/Distributor in lieu of Car Dealership.

It is furthermore agreed that the following form is deleted from the policy:

### CG2149 0498  Total Pollution Exclusion

All other terms and conditions remain unchanged.

_____
Authorized Representative

EXHIBIT   3

193

POLICY NUMBER:   GL 359-64-60 RA                COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

COMPREHENSIVE POLLUTION EXCLUSION ENDORSEMENT INCLUDING
HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under COVERAGE A (Section l) replaced by the following, except with
regard to any hostile fires as stated under the heading in Hostile Fire Exception in this
endorsement:

f.  (1)  "Bodily injury" or "property damage" which would not have occurred in whole or
         part but for the actual, alleged or threatened discharge, dispersal, seepage,
         migration, release or escape of pollutants at any time.

    (2)  Any loss, cost or expense arising out of any:

         (a)  Request, demand or order that any insured or other test for, monitor, clean up,
              remove, contain, treat, detoxify or neutralize, or in any way respond to,
              assessing the effect of pollutants: or

         (b)  Claim or suit by or on behalf of a governmental authority for damages because
              of testing for, monitoring, cleaning up, removing, containing, treating,
              detoxifying or neutralizing, or in any way responding to, or assess the effects
              of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including
smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes material
to be recycled, reconditioned or reclaimed.

### HOSTILE FIRE EXCEPTION

This exclusion does not apply in either of its two parts (f(1) or (f(2) above) to any "bodily
injury" or "property damage" or to any loss, cost or expense caused by heat, smoke, or
fumes from a hostile fire, providing such hostile fire does not originate at any site
operating as a waste disposal facility or waste storage facility.  As used in this
endorsement, a hostile fire means one which becomes uncontrollable or breaks out from
where it was intended to be.

EXHIBIT   3

**194**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ENDORSEMENT #

This endorsement, effective 12:01 A.M.      02/19/99      forms a part of Policy

No.  GL 359-64-60 RA   issued to   HYUNDAI MOTOR AMERICA

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit, a. is hereby deleted and replaced with the following:**

a.   You must see to it that we are notified as soon as practicable of any "occurrence" or an offense which may result in a claim.  Knowledge of an "occurrence" or an offense by your agent, your servant, or your employee will not in itself constitute knowledge to you unless the Director of Risk Management (or one with similar or equivalent title) or his/her designee, at the address shown in the policy declarations, will have received such notice.  To the extent possible notice should include:

(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

AUTHORIZED REPRESENTATIVE

61707 (12/94)

EXHIBIT   3

195

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ENDORSEMENT #

This endorsement, effective 12:01 A.M.   02/19/99   forms a part of Policy

No. GL 359-64-60 RA   issued to   HYUNDAI MOTOR AMERICA

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### NONOWNED WATERCRAFT ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions, g. - Aircraft, Auto or Watercraft, (2), is amended to read:**

(2)   A watercraft you do not own that is:

   (a)   Less than _____ feet long; and
   (b)   Not being used to carry persons or property for a charge.

However, this exception does not apply to watercraft you do not own that is used in any pre-arranged race or speed contest.

**Section II - Who is an Insured, is amended to add following the last unmarked paragraph:**

No person is an insured with respect to any watercraft owned in whole or in part by such person or by a member of his household.

_____
AUTHORIZED REPRESENTATIVE

64009 (11/95)

EXHIBIT   3

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ENDORSEMENT #

This endorsement, effective 12:01 A.M.      02/19/99      forms a part of Policy

No. GL 359-64-60 RA    issued to  HYUNDAI MOTOR AMERICA

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### EXPECTED OR INTENDED INJURY EXCLUSION DELETION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section I - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions, a. - Expected or Intended Injury  is amended to read:**

**a.  Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

AUTHORIZED REPRESENTATIVE

65156 (4/96)

EXHIBIT   3

197

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**ENDORSEMENT #**

This endorsement, effective  12:01 A.M         02/19/99        forms a part of

Policy No. GL 359-64-60   RA  issued to         HYUNDAI MOTOR AMERICA

by  .NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**BODILY INJURY DEFINITIONS EXTENSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Section V – Definitions, 3 – "Bodily Injury" is amended to read:

3.      **"Bodily Injury" means bodily injury, sickness or disease, mental anguish, shock, mental injury and humiliation when accompanied by physical injury sustained by a person, including death resulting from any of these at any time**

Authorized Representative

EXHIBIT  3                    198

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ENDORSEMENT #

This endorsement, effective 12:01 A.M.       02/19/99      forms a part of Policy

No.  GL 359-64-60  RA   issued to  HYUNDAI MOTOR AMERICA

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## ⁄ INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

*This endorsement modifies insurance provided under the following:*

Commercial General Liability Coverage Form

**Section V - DEFINITIONS - is amended to add:**

**"Incidental Medical Malpractice Injury"** means "Bodily Injury" arising out of the rendering of or failure to render the following services:

a.   medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

b.   the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

**Section II - WHO IS AN INSURED, 2. a. (1) (d) is deleted in its entirety and replaced with the following:**

(d)  Arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any physician, dentist, nurse or other medical practitioner employed or retained by you.  However, the insurance provided hereunder to such persons will not apply to liability arising out of services performed outside of the scope of their duties as your "employees."  Any series of continuous, repeated or related acts will be treated as the occurrence of a single negligent professional healthcare service.

The Coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury".

_____
AUTHORIZED REPRESENTATIVE

65157 (4/96)

EXHIBIT   3                                    199

POLICY NUMBER: GL   359-64-60 RA

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

EXHIBIT   3

200

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY − NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

201

EXHIBIT  3

   Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

1. NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH
A STOCK COMPANY

2. AMERICAN HOME ASSURANCE COMPANY
A STOCK COMPANY

 Member Companies of
American International Group

3. THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA
A STOCK COMPANY

EXECUTIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270

| 1 | COVERAGE IS PROVIDED IN THE
COMPANY DESIGNATED BY NUMBER
(HEREIN CALLED THE COMPANY). . |

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**POLICY NO.**   GL  359-64-60 RA

**NAMED INSURED**   HYUNDAI MOTOR AMERICA INC

**MAILING ADDRESS**   10550 TALBERT AVE

FOUNTAIN VALLEY   CA 92708-0000

**POLICY PERIOD: From**   02/19/99   **to**   02/19/00   **at**

**12:01 A.M. Standard Time at your mailing address shown above**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Prod–Comp Operations) | $ | 2,000,000 |
| PRODUCTS–COMPLETED OPERATIONS AGGREGATE LIMIT | $ | NOT COVERED |
| PERSONAL & ADVERTISING INJURY LIMIT | $ | 1,000,000 |
| EACH OCCURRENCE LIMIT | $ | 1,000,000 |
| FIRE DAMAGE LIMIT | $ | 1,000,000 Any One Fire |
| MEDICAL EXPENSE LIMIT | $ | 5,000 Any One Person |

**Forms Of Business:**   ☐ Individual   ☐ Partnership   ☐ Joint Venture   ☐ Organization
(Other than Partnership
or Joint Venture)

**Business Description:**   CAR DEALERSHIP

**Location Of All Premises You Own, Rent or Occupy:**   SEE ATTACHED SCHEDULE

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE. | ADVANCE PREMIUM | |
|---|---|---|---|---|---|
| | | | | PR/CO | ALL OTHER |
| SEE ATTACHED SCHEDULE | | | | | |

Premium shown is payable: $   at inception.

| **TOTAL: $** | 40,000 |

ENDORSEMENTS ATTACHED TO THIS POLICY:_____ **SEE ATTACHED SCHEDULE.**

COUNTERSIGNED _____   BY _____

(Date)   (Authorized Representative)

EXHIBIT   3

202

## CGL EXTENSION SCHEDULE

Policy No.    GL    359-64-60 RA

[X] Commercial General Liability Insurance
[ ] Product Liability Policy
[ ] Owners & Contractors Protective - (OCP)
[ ] Railroad Protective Liability
[ ] Liquor Liability

| Classification | Code No. | Premium Basis | | Rate | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | | | PR/CO | All Other |
| | | | | | $ | $ |
| LOC:001  STATE/TERR:004/003 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANFACTURING MAINTAINED BY THE INSURED (LESSOR'S RISKS ONLY) - OTHER THAN | 61217 | 215,000 | A | FLAT | INCLUDED | 39,725. |
| EMPLOYEE BENEFITS | 73444 | 500 | T | FLAT | | 275 |
| LOC:002  STATE/TERR:004/006 | | | | | | |
| WAREHOUSES - PRIVATE - OTHER THAN NOT FOR PROFIT "PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT" | 68706 | IF ANY | A | 78.086 | INCLUDED | |
| LOC:003  STATE/TERR:010/003 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) - OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 29.138 | INCLUDED | |
| LOC:004  STATE/TERR:029/017 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) - OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 148.771 | INCLUDED | |
| LOC:005  STATE/TERR:056/014 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANFACTURING MAINTAINED BY THE INSURED (LESSOR'S RISKS ONLY) - OTHER THAN | 61217 | IF ANY | A | 37.843 | INCLUDED | |
| LOC:006  STATE/TERR:004/003 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) - OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 85.097 | INCLUDED | |
| LOC:007  STATE/TERR:010/003 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) - OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 29.138 | INCLUDED | |
| LOC:008  STATE/TERR:036/001 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) - OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 54.987 | INCLUDED | |
| LOC:009  STATE/TERR:029/017 | | | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) - OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 148.771 | INCLUDED | |
| | | T=OTHER M=ADMISSIONS A=AREA S=GROSS SALES P=PAYROLL C=TOTAL COST U=UNITS | | = PER $1000  = EACH | | 203 |
| | | | | | Total: $ | 40,000 |

EXHIBIT   3

## CGL EXTENSION SCHEDULE

Policy No. GL 359-64-60 RA

[X] Commercial General Liability Insurance
[ ] Product Liability Policy
[ ] Owners & Contractors Protective – (OCP)

[ ] Railroad Protective Liability
[ ] Liquor Liability

| Classification | Code No. | Premium Basis | | Rate | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | | | PR/CO | All Other |
| | | | | | $ | $ |
| LOC:010   STATE/TERR:021/004 | | | | | | |
| BUILDINGS OR PREMISES – BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) – OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 61.276 | INCLUDED | |
| LOC:011   STATE/TERR:004/006 | | | | | | |
| BUILDINGS OR PREMISES – BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) – OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 82.485 | INCLUDED | |
| LOC:012   STATE/TERR:021/005 | | | | | | |
| BUILDINGS OR PREMISES – BANK OR OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISKS ONLY) – OTHER THAN NOT FOR PROFIT | 61212 | IF ANY | A | 48.960 | INCLUDED | |

T=OTHER
M=ADMISSIONS
A=AREA
S=GROSS SALES          = PER $1000
P=PAYROLL
C=TOTAL COST

U=UNITS               = EACH

204

EXHIBIT 3

| | | |
|---|---|---|
| Total: $ | | 40,000 |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

## 205

EXHIBIT   3

POLICY NUMBER: GL    359-64-60 RA

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

EXHIBIT   3

206

Copyright, Insurance Services Office, Inc., 1994     CG 00 01 01 96   □

POLICY NUMBER: GL    359-64-60 RA

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

EXHIBIT   3

207

POLICY NUMBER: GL    359-64-60 RA

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person, organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

EXHIBIT   3

208

POLICY NUMBER: GL   359-64-60 RA

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and re-(2) The expenses are incurred and re-date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**209**

EXHIBIT   3

POLICY NUMBER: GL  359-64-60 RA

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I — Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

**210**

EXHIBIT  3

POLICY NUMBER: GL 359-64-60 RA

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

EXHIBIT 3

211

POLICY NUMBER: GL   359-64-60 RA

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

EXHIBIT   3

212

   Copyright, Insurance Services Office, Inc., 1994   CG 00 01 01 96   □

POLICY NUMBER: GL   359-64-60 RA

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

### b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

EXHIBIT   3

213

   Copyright, Insurance Services Office, Inc., 1994

POLICY NUMBER: GL   359-64-60 RA

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

EXHIBIT   3

214

Copyright, Insurance Services Office, Inc., 1994

POLICY NUMBER: GL   359-64-60 RA

**(b)** The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

215

EXHIBIT   3

POLICY NUMBER: GL    359-64-60 RA

b. While it is in or on an aircraft, watercraft or **"auto"**; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well.servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**216**

EXHIBIT  3

    Copyright, Insurance Services Office, Inc., 1994     □

POLICY NUMBER: GL    359-64-60 RA

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

217

EXHIBIT   3

POLICY NUMBER: GL   359-64-60 RA                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CANCELLATION BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

Number of Days    090

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

Paragraph 2. of CANCELLATION (Common Policy Conditions) is replaced by the following:

**2.** We may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for non payment of premium; or

   **b.** The number of days shown in the Schedule before the effective date of cancellation if we cancel for any other reason.

EXHIBIT 3                                    **218**

CG 02 12 11 85    Copyright, Insurance Services Office, Inc., 1984

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRODUCTS – COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products – completed operations hazard".

EXHIBIT   3

219

CG 21 04 11 85          Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT−RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.** Exclusions of COVERAGE A − BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I − Coverages):

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment−related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment−related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.** Exclusions of COVERAGE B − PERSONAL AND ADVERTISING INJURY LIABILITY (Section I − Coverages):

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment−related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment−related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

EXHIBIT 3

220

POLICY NUMBER: GL    359-64-60 RA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 49 07 98

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under paragraph **2.**, Exclusions of Coverage A - Bodily Injury And Property Damage Liability (Section I - Coverages) is replaced by the following:

This insurance does not apply to:

**f.    Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

EXHIBIT 3          221

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a) Requires a license;

(b) Is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

EXHIBIT   3

222

CG 21 50 09 89          Copyright, Insurance Services Office, Inc., 1988

POLICY NUMBER: GL   359-64-60 RA

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

AS REQUIRED BY A WRITTEN CONTRACT OR AGREEMENT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products–completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

223

EXHIBIT   3

CG 24 04 10 93         Copyright, Insurance Services Office, Inc., 1992         □

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT–AGGREGATE LIMITS OF INSURANCE PER LOCATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

EXHIBIT   3                          224

CG 25 04 11 85          Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following are added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

1. When this Coverage Part is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the coverage part for Bodily Injury Liability or Property Damage Liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

2. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverages required by any motor vehicle insurance law. We will provide the required limits for those coverages.

EXHIBIT 3

225

CG 99 01 11 85          Copyright, Insurance Services Office, Inc., 1984

POLICY NUMBER: GL   359-64-60 RA

IL 00 21 11 94

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
–TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

226

EXHIBIT   3

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

227

EXHIBIT 3

Copyright, Insurance Services Office, Inc., 1994
IL 00 21 11 94

POLICY NUMBER: GL   359-64-60 RA

IL 02 70 08 97

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

*This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A), forgery or alteration (Coverage Form B, or public employee dishonesty (Coverage Forms O and P).

A. Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less:**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

a. 10 days before the effective date of cancellation if we cancel for:

(1) Nonpayment of premium; or

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

b. 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

228

EXHIBIT   3

Copyright, Insurance Services Office, Inc., 1997

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

(a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

(b) Continuation of the policy coverage would:

(i) Place us in violation of California law or the laws of the state where we are domiciled; or

(ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least

(1) 10 days before the effective date of cancellation if we cancel for a reason listed in Paragraph 3.a.(1) or 3.a.(2); or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

B. The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Businessowners Policy

Commercial Property Coverage Part

Farm Coverage Part – Farm Property Coverage Form

a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

b. We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction (**c.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Businessowners Policy — Businessowners Special Property Coverage Form;

(2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

(3) Farm Coverage Part – Farm Property Coverage Form; Covered Causes Of Loss – Special.

C. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

229

EXHIBIT   3

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Businessowners Policy

Commercial Property Coverage Part

Farm Coverage Part – Farm Property Coverage Form

a. We may elect not to renew such coverage for any reason, except as provided in **b, c.** and **d.** below:

b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

(1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

(2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

(3) We have:

(a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

(b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Businessowners Policy – Businessowners Special Property Coverage Form;

(2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

(3) Farm Coverage Part – Farm Property Coverage Form; Covered Causes Of Loss – Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

EXHIBIT   3

230

   Copyright, Insurance Services Office, Inc., 1997

**ENDORSEMENT**

**This endorsement, effective 12:01 AM** 02/19/1999

**Forms a part of policy no.:** GL    359-64-60 RA

**Issued to:** HYUNDAI MOTOR AMERICA INC

**By:** NATIONAL UNION FIRE INS.CO.

**DATE RECOGNITION ENDORSEMENT**

This endorsement modifies insurance under the Commercial General Liability policy.

This insurance does not apply to "bodily injury, " "property damage, " "personal injury " or "advertising injury " arising directly or indirectly out of:

A.   Any actual or alleged failure, malfunction or inadequacy of:

    1.   Any of the following, whether belonging to any **Insured** or to others:

        a.   Computer hardware, including microprocessors;

        b.   Computer application software;

        c.   Computer operating systems and related software;

        d.   Computer networks;

        e.   Microprocessors (computer chips) not part of any computer system; or

        f.   Any other computerized or electronic equipment or components; or

    2.   Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1. of this endorsement

    due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

B.   Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for any potential or actual problems described in Paragraph A. of this endorsement.

All other terms and conditions of this policy remain unchanged.

EXHIBIT   3

231

AUTHORIZED REPRESENTATIVE

# ENDORSEMENT

This endorsement, effective 12:01 AM 02/19/1999

Forms a part of policy no.: GL    359-64-60 RA

Issued to: HYUNDAI MOTOR AMERICA INC

By: NATIONAL UNION FIRE INS.CO.

## DATE RECOGNITION ENDORSEMENT

The EMPLOYEE BENEFITS LIABILITY ENDORSEMENT/COVERAGE PART to which this DATE RECOGNITION ENDORSEMENT attaches does not apply to:

A.   Any actual or alleged failure, malfunction or inadequacy of:

    (1)   Any of the following, whether belonging to any **Insured** or to others:

        (a)   Computer hardware, including microprocessors;

        (b)   Computer application software;

        (c)   Computer operating systems and related software;

        (d)   Computer networks;

        (e)   Microprocessors (computer chips) not part of any computer system; or

        (f)   Any other computerized or electronic equipment or components; or

    (2)   Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A(1)(a)-(f) of this endorsement.

    due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

B.   Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A. of this endorsement.

All other terms, conditions and exclusions remain the same.

232

EXHIBIT   3

AUTHORIZED REPRESENTATIVE

Includes copyrighted material of the Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc. 1998

70631 (5/98)

## ENDORSEMENT

This endorsement, effective 12:01 A.M.  02/19/1999          forms a part of

policy No. GL    359-64-60 RA  issued to HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### ASBESTOS EXCLUSION ENDORSEMENT

It is hereby understood and agreed that such insurance as is afforded by the Company, Policy #
GL    359-64-60 RA  , for Bodily Injury Liability and Property Damage Liability is subject to the following exclusion:

This insurance does not apply to any liability for property damage, bodily injury, sickness, disease, occupational dis-
ease, disability, shock, death, mental anguish and mental injury at any time arising out of the manufacture of, mining
of, use of, sales of, installation of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust,
or to any obligation of the insured to indemnify any party because of damages arising out of such property damage,
bodily injury, sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any
time as a result of the manufacture of, mining of, use of, sales of, installation of, distribution of, or exposure to
asbestos products, asbestos fibers or asbestos dust.

It is further understood and agreed that the company is not obligated to defend any suit or claim against the insured
alleging bodily injury or property damage and seeking damages, if such suit or claims arises from bodily injury or
property damage resulting from or contributed to, by any and all manufacture of, mining of, use of, sales of, installation
of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

233

## EXHIBIT   3

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  02/19/1999           forms a part of

policy No. GL     359-64-60 RA  issued to HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>RADIOACTIVE MATTER EXCLUSION</u>

This policy does not apply to:

"Bodily Injury" or "Property Damage" arising from the actual, alleged or threatened exposure of person(s) or property to any radioactive matter.

234

AUTHORIZED REPRESENTATIVE

45782(5/87)                         EXHIBIT   3

## ENDORSEMENT

This endorsement, effective 12:01 A.M.  02/19/99          forms a part of

policy No. GL     359-64-60 RA  issued to HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### EMPLOYEE BENEFITS LIABILITY INSURANCE
### PROVIDES CLAIMS MADE COVERAGE - Please read carefully

### ADDITIONAL DECLARATIONS

### LIMIT OF LIABILITY

____1,000,000 Each Wrongful Act or series of related Wrongful Acts.

_____1,000,000 Each Annual Aggregate

**COVERAGE**
Employee Benefits
Liability Insurance

**DEDUCTIBLE**
$1,000 Ded.___ Each Wrongful Act
or series of related Wrongful Acts.

No. of Employees

500_____

Estimated Annual Premium
INCLUDED ✓_____

## INSURING AGREEMENTS

**EMPLOYEE BENEFITS LIABILITY**

We will pay the "Insured" for those sums which the "Insured" shall become legally obligated to pay as damages because of any claim made against the "Insured" due to any "Wrongful Act" of the "Insured", or any other person for whose act the "Insured" is legally liable, in the "Administration" of the "Insured's Employee Benefits Programs", as defined in the Definitions section of this policy. This insurance applies only if a claim for damages covered by this endorsement is first made against the "Insured" during the policy period. We have the right and duty to defend any suit against the "Insured" seeking damages on account of such negligent act, error or omission, even if any of the allegations of the suit are groundless, false or fraudulent, and settlement of any claim or suit as we deem expedient.

235

EXHIBIT  3

## DEFINITIONS

### DEFINITION OF "Insured"

With respect to the insurance afforded by this endorsement the unqualified word "Insured" includes you, provided that (a) if you are designated as an individual, the insurance applies only to the conduct of a business of which you are the sole proprietor and (b) the unqualified word "Insured" also includes the following:

A.    If you are or include a partnership or joint venture, any partner or member therof only with respect to his liability as such;

B.    Any of your executive officers, directors or stockholders while acting within the scope of his duties as such;

C.    Any employee, provided such employee is authorized to act in the "Administration" of your "Employee Benefits Program."

### DEFINITION OF "Employee Benefits Programs"

The term "Employee Benefits Program" means (a) group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workmen's compensation, unemployment insurance, social benefits, disability benefits, and (b) any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

### DEFINITION OF "Administration"

The unqualified word "administration" wherever used shall mean:

A.    Giving counsel to employees with respect to the "Employee Benefits Programs";

B.    Interpreting the "Employee Benefits Programs";

C.    Handling of records in connection with the "Employee Benefits Programs";

D.    Effective enrollment, termination or cancellation of employees under the "Employee Benefits Programs", provided all are acts which are authorized by you.

### DEFINITION OF "Wrongful Act"

"Wrongful Acts" means any actual or alleged negligent act, error or omission in the "Administration" of the "Employee Benefits Plan."

## EXCLUSION

This endorsement does not apply to:

1.    Any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation;

2.    Bodily injury to or sickness, disease or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

3.    Any claim for failure of performance of contract by an insurer;

4.    Any claim based upon the "Insured's" failure to comply with any law concerning workmen's compensation, unemployment insurance, social security or disability benefits;

5.    Any claim based upon:

A.    failure of any investment(s) including but not limited to stock to perform as represented by an "Insured";

B.    advice given by an "Insured" to an employee to participate in any investment plan including but not limited to stock subscription plans;

6.    All sums which the "Insured" shall become legally obligated to pay as loss because of any Breach of Fiduciary Duty (as defined below) or because of any Breach of Fiduciary Duty by any person for which the "Insured" is legally responsible and arising out of the "Insured"s" activity as a fiduciary of any Plan covered by this endorsement. The term, "Breach of Fiduciary Duty" shall mean to violation of any of the responsibilities, obligations of duties imposed upon fiduciaries by the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 or amendments thereto with respect to any Plan covered by this endorsement.

EXHIBIT   3

236

7.     Any claim made against the "Insured" based on or attributable to any failure or omission on the part of the "Insured" to effect and maintain insurance or bonding for Plan Property or Assets.

CONDITIONS

## LIMITS OF LIABILITY

Regardless of the number of (a) "Insureds" under this policy (b) persons who sustain damage or (c) claims made or suit brought for such damages; the limit of liability stated in the ADDITIONAL DECLARATIONS of this endorsement as applicable to each "Wrongful Acts" or series of related "Wrongful Acts" is the limit of our liability for all claims made on account of any "Wrongful Act" or series of related acts by this policy for the period of liability. The limit stated in the ADDITIONAL DECLARATIONS as "Each Annual Aggregated" is, subject to the above provisions, the total limit of our liability for all claims covered during the period this endorsement is in force.

## PREMIUM

The premium stated in the ADDITIONAL DECLARATIONS is an estimated premium only. Upon termination of each annual period of this endorsement the "Insured", on request, will furnish us a statement of the total number of employees at the end of the period. The earned premium shall be computed on the average of the number of employees at the end of the coverage period and that stated in the ADDITIONAL DECLARATIONS. If the earned premium thus computed exceeds the estimated premium paid, the "Insured" shall pay the excess to us; if less, we shall return to the "Insured" the unearned portion paid by such "Insured".

## DEDUCTIBLE

The Deductible amount indicated in the ADDITIONAL DECLARATIONS shall be subtracted from the total amount of all sums which are are obligated to pay or incur on behalf of the "Insured" on account of each occurrence as stated in the ADDITIONAL DECLARATIONS. The terms of this endorsement including those with respect to notice of claim or suit and out right to investigate and negotiate any such claim or suit, apply irrespective of the application of the deductible amount.

## OPTIONAL EXTENDED REPORTING ENDORSEMENT

The coverage under the Employee Benefits Liability Endorsement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to buy a reporting endorsement. It extends the time to report covered claims. The claim must first be made against an "Insured" and reported to us within three (3) years after the Employee Benefits Liability Endorsement ends and while the reporting endorsement is in effect.

To obtain this reporting endorsement you must request it in writing and pay the additional premium within thirty (30) days after this agreement ends. If we don't receive written notice and payment within this period, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium. This additional premium will not exceed 200% of the annual premium for the Employee Benefits Liability Endorsement. Once you pay the premium we can't cancel the endorsement. We will determine the additional premium taking into account the following:

a.     The exposures insured;
b.     Previous types and amounts of insurance;
c.     Limits of Liability available under the Employee Benefit Liability Insurance for future payment of damages; and
d.     Other related factors.

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Liability applicable to any claim to which The Employee Benefit Liability Endorsement applies.

EXHIBIT   3         237

**CONFORMITY WITH STATUTE**

Terms of this endorsement which are in conflict with the statute of the state wherein this endorsement is issued are hereby amended to conform to such statutes.

**OTHER TERMS OF POLICY**

All other conditions, terms and exclusions contained in this policy remain unchanged.

EXHIBIT   3

238

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT

This endorsement, effective 12:01 A.M.   02/19/1999        forms a part of

policy No. GL    359-64-60 RA  issued to HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### BROAD FORM NAMED INSURED

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM

**Policy Declarations, "Named Insured" is revised to include:**

"Named Insured" means the person or organization first named as the Named Insured on the Declarations Page of this policy (the "First Named Insured"). Named Insured also includes (1) any other person or organization named as a Named Insured on the Declarations Page; (2) any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page has more than 50% ownership interest in or exercises management or financial control over at the inception date of this policy, provided such subsidiary, associated, affiliated, allied or acquired company or corporation and their operations have been declared to Us prior to the inception date of this policy.

EXHIBIT   3   :                            239

AUTHORIZED REPRESENTATIVE

# ENDORSEMENT

This endorsement, effective 12:01 A.M.   02/19/1999        forms a part of

policy No. GL    359-64-60 RA  issued to HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINTENTIONAL ERRORS AND OMISSIONS

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section IV - Commercial General Liability Conditions, 6. - Representations** is amended by adding:

d.     The unintentional failure by you or any Insured to provide accurate and complete representations as of the inception of the policy will not prejudice the coverages afforded by this policy.

240

EXHIBIT   3

_____
AUTHORIZED REPRESENTATIVE

# ENDORSEMENT

This endorsement, effective 12:01 A.M.  02/19/1999       forms a part of

policy No. GL     359-64-60 RA issued to HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FELLOW EMPLOYEE EXCLUSION DELETED**

*This endorsement modifies insurance provided under the following:*

·    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section II - Who is an Insured, 2. a. (1) (a) is amended to read:**

(a)    T o you, to your partners or members (if you are a partnership or joint venture).

**Section II - who is an Insured, 3. a.**

is deleted in its entirety.

EXHIBIT  3

241

AUTHORIZED REPRESENTATIVE

POLICY NUMBER:  GL 359-64-60 RA

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED — OWNERS, LESSEES OR CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization:**   ON FILE WITH COMPANY

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED** (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

EXHIBIT   3

242

CG 20 10 11 85

Copyright, Insurance Services Office, Inc., 1984

POLICY NUMBER: GL  358-64-60 RA                               COMMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**1.** Designation of Premises (Part Leased to You):
ON FILE WITH COMPANY
**2.** Name of Person or Organization (Additional Insured): ON FILE WITH COMPANY
**3.** Additional Premium:

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

243

EXHIBIT  3

POLICY NUMBER: GL 359-64-60 RA                    COMMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

#### SCHEDULE

**Name of Person or Organization:**   ALL LESSORS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply to:

1.  To any "occurrence" which takes place after the equipment lease expires;

2.  To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

EXHIBIT  3                    244

POLICY NUMBER:   GL 359-0 60 RA                              ( )MMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION—DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Description of Professional Services:**   PER SCHEDULE ON FILE WITH COMPANY 

1.

2.

3.

(If no entry appears above. information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

245

EXHIBIT   3

     Copyright. Insurance Services Office. Inc.. 1984

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:

1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

2. Supervisory, inspection or engineering services.

EXHIBIT   3

246

Copyright, Insurance Services Office, Inc., 1984

POLICY NUMBER:     GL 359-( `-60 RA                    (   )MMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Premises:**   PER SCHEDULE ON FILE WITH COMPANY

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

EXHIBIT   **3** ' '

247

CG 21 44 11 85                    Copyright. Insurance Services Office. Inc., 1984

Copyright. Insurance Services Office. Inc., 1984

ENDORSEMENT #

This endorsement, effective  12:01 A.M          02/19/99          forms a part of

Policy No.  GL 359-64-60  RA  issued to          HYUNDAI MOTOR AMERICA INC

by   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY**

**TOTAL LEAD EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY**

This insurance does not apply to any "bodily injury". "property damage", "personal injury", or "advertising injury

", or any other loss, cost or expense arising out of the presence, ingestion, inhalation, or absorption of or exposure to lead in any form or products containing lead.

_____

Authorized Representative

58332 (7/93)

EXHIBIT   3                                     248

## ENDORSEMENT

This endorsement, effective 12:01 A.M.        02/19/99        forms a part of

policy No. GL        359-64-60        RA issued to   HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - WHERE REQUIRED UNDER CONTRACT OR AGREEMENT**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section II - Who Is An Insured, 1.,** is amended to add:

d.    Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

1.    The coverage and/or limits of this policy, or
2.    The coverage and/or limits required by said contract or agreement.

249

AUTHORIZED REPRESENTATIVE

EXHIBIT   3

61712 (12/94)

## ENDORSEMENT

This endorsement, effective 12:01 A.M.     02/19/99       forms a part of

policy No. GL ·359-64-60     RA issued to   HYUNDAI MOTOR AMERICA INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

### AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT (BROAD FORM)

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

For policy's issued with a Self-Insured Retention Endorsement **Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit, a.** is amended to read:

a.    You must see to it that we are notified as soon as practicable of any "occurrence" or an offense which may result in a claim. Knowledge of an "occurrence" by your agent, your servant, or your employee shall not in itself constitute knowledge to you unless the Director of Risk Management or his/her designee, at the address shown in the policy declarations, will have received such notice. To the extent possible, notice should include:

   (1)   How, when and where the "occurrence" or offense took place;

   (2)   The names and addresses of any injured persons and witnesses; and

   (3)   The nature and location of any injury or damage arising out of the "occurrence" or offense, including but not limited to:

      (a)   a fatality;

      (b)   paralysis of any part of the body;

      (c)   .a major extremity or multiple minor extremity amputations;

      (d)   a brain or brain stem injury;

      (e)   severe burns or disfigurement;

      (f)   partial or total blindness;

      (g)   loss or impairment of hearing;

      (h)   a heart attack;

      (i)   reserves that exceed 50% of the "retained limit".

   As respects the above categories, You must provide us with any and all additional information, material and/or data, subsequent to the original notice, as it becomes available.

**Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit, is also amended to add:**

(e)   Notice hereunder will be forwarded in writing to:

250

AUTHORIZED REPRESENTATIVE

EXHIBIT   3

62133 (3/95)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ENDORSEMENT #

This endorsement, effective 12:01 A.M.          02/19/99          forms a part of Policy

No.  GL 359-64-60  RA      issued to      HYUNDAI MOTOR AMERICA INC

by:NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### SECURITIES AND FINANCIAL INTEREST EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions, is amended to add:**

"Bodily injury" or "property damage", arising out of:

(1) The purchase, or sale or offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

(2) Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

(3) Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. - Exclusions, a. "Personal injury" or "advertising injury", is amended to add:**

"Personal injury" or "advertising injury" arising out of:

(a) The purchase, or sale or offer of sale, or solicitation or advertising of any security, debt, bank deposit or financial interest or instrument;

(b) Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

251

_____
Authorized Representative

EXHIBIT   3

65322 (11/96)

## AMERICAN INTERNATIONAL GROUP, INC.

70 PINE STREET
NEW YORK, N.Y. 10970

THOMAS R. TIZZIO
SENIOR VICE CHAIRMAN

June 8, 1998

To Our Insureds:

I am writing to call your attention to a situation that has the potential to cause unprecedented dislocation to businesses in the United States and throughout the world. As many of you know, thousands, perhaps millions, of computers and devices with embedded microchips record only the last two digits of a year. As a result, they may not be able to recognize that January 1, 2000 (or subsequent dates) comes *after* December 31, 1999. As soon as dates in the Year 2000 become relevant to the operation of products or business transactions - a process that has already begun-computers and microchips containing the "millennium bug" may produce erroneous calculations or cease to function, causing problems that can range from the merely inconvenient to the potentially disastrous. Inventory and accounting systems will be affected; so will credit-card validation, electronic data interchange, automated banking reports, pension benefit payments, drug distribution systems for pharmacies and hospitals, and mechanical systems operating everything from office building environmental controls and elevator banks to telephone switches and oil refineries. The cost of fixing the problem in the United States alone has been estimated at more than $600 billion.

Whether the dislocation resulting from this "bug" will be crippling or merely extraordinarily expensive, we at AIG believe that any business that uses or is affected by computers -- in other words, every business in the country -- must respond immediately, proactively, and aggressively. Most Year 2000 problems *can* be averted, given sufficient foresight, resources, and will. Companies will be judged -- and, in some cases, will succeed or fail -- depending on how they address these issues.

At AIG, we have identified those of our systems that are subject to Year 2000 risk, and we are well on the way to ensuring that all of our systems will be Year 2000-compliant in time to prevent any significant disruption or dislocation in our business or in the services we provide to our insureds. We are also communicating with the third-party brokers, agents, and administrators with whom we deal to alert them to these issues and encourage them to take similar actions. Every process to address Year 2000 should include backup and contingency plans to ensure that any incidents that do occur have minimal impact on operations.

The principal purpose of this letter is to encourage you, in the strongest possible terms, to do what is necessary to ensure that you have the same degree of comfort about the operation of your business in the face of potential Year 2000 problems as we have about ours. The Year 2000 bug is, first and foremost, a business and technical problem that must be addressed on that basis. It cannot be too strongly emphasized that a company's most important response to the Year 2000 problem is to take all feasible steps to eliminate the problem on a *technical* basis--or, to the extent the problem cannot be eliminated, to minimize its impact. Resources must be assembled and managed; the board of directors should take an active and ongoing role in ensuring that management has identified, addressed, and resolved problems on a timely basis.

What, then, should your organization do?  There is obviously no single general solution to a problem that will have as many different manifestations as there are addressees of this letter, but a few common sense guideposts may be helpful:

- If you have not yet evaluated your Year 2000 exposure, do it now.  Assemble whatever resources are needed to get a handle on the scope of the problem at your organization *now*, so that remedial efforts can be started without further delay.  Most public companies will already have started this process in response to SEC disclosure requirements, but *everyone* should take a good, hard look at their compliance efforts to ensure that nothing has been overlooked.

- Set priorities.  What is critical and what merely important?  What can be fixed and what should be junked?

- Be practical.  Many "Year 2000 questionnaires" seem designed as much to transfer potential blame as to solve the problem.  If there is a truly crucial third party -- your payroll services vendor, for example, or the sole supplier of an indispensable raw material -- don't just send a questionnaire.  Instead, give serious consideration to direct testing and evaluation of the vendor or supplier's systems.  If there is a crippling Year 2000 problem, a later breach of warranty claim against the supplier's trustee in bankruptcy will not provide you a great deal of comfort.

- Test, test, and then test some more.  Expect and plan for the unexpected.

As I said at the outset of this letter, the potential for dislocation from Year 2000 problems is unprecedented.  But so is the level of knowledge concerning the problem and the technical ability to solve it.  I urge all of our insureds to address their Year 2000 issues promptly and aggressively.

Senior Vice Chairman
Thomas R. Tizzio

253

EXHIBIT  3