RAPHAEL COTKIN
JAMES P. COLLINS, JR.
WILLIAM H. GINSBURG
STEVEN L. PAINE
WILLIAM D. NAEVE*
TERRY C. LEUIN
ROGER W. SIMPSON
JOAN M. COTKIN
ROBERT G. WILSON
DAVID A. WINKLE
KAREN C. FREITAS**
BRIAN R. HILL
JEFFREY R. ALBREGTS†
KEVIN A. DUFFIS*
CAROLE H. COHEN**
C. EDWARD LANGHAMMER, JR.
GREGORY A. SARGENTI
TERRY L. KESINGER
ELLEN M. TIPPING*
DAVID W. JOHNSON, JR.
COOPER W. COLLINS
DINA L. TAULLI
DANIA YOUNESS
CORALIA A. LESIN
JAMES R. CARTY
MARIE ELLERTON†
ETHAN A. HORN
TERRY KINNALLY†
AMY E. JONES†

*ADMITTED TO PRACTICE IN
CALIFORNIA AND NEVADA

**FAMILY LAW CERTIFIED SPECIALIST
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

†NOT ADMITTED IN CALIFORNIA



A Professional Corporation

ATTORNEYS AT LAW

COUNSEL TO THE FIRM
NAIDA L. BROWN

**Los Angeles Office**
Twenty-Fourth Floor
300 South Grand Avenue
Los Angeles, CA 90071-3134
(213) 688-9350
Facsimile (213) 688-9351

Santa Ana Office
200 West Santa Ana Blvd., Suite 800
Santa Ana, CA 92701-4155

Mailing Address:
Post Office Box 22005
Santa Ana, CA 92702-2005
(714) 835-2330
Facsimile (714) 835-2209

Las Vegas Office
701 Bridger Avenue, Suite 700
Las Vegas, NV 89101
(702) 384-1722
Facsimile (702) 384-2534

www.ccglaw.cc

March 3, 2006

Paula S. Giles
AIG Domestic Claims, Inc.
Primary Coverage Unit
175 Water Street, 22nd Floor
New York, NY 10038

    Re:    *Orion IP, LLC v. Hyundai Motor America, et al.*
           Insured:    Hyundai Motor America
           Claimant:   Orion IP, LLC
           Your Claim: 684-118121
           Policies:    GL 359-64-60 RA (2/19/99 - 2/19/00)
                           GL 359-67-61 RA (2/19/00 - 2/19/01)
                           GL 359-70-98 RA (2/19/01 - 2/19/02)

Dear Ms. Giles:

      We are insurance coverage counsel for Hyundai Motor America. The purpose of this letter is to respond to your letter dated January 30, 2006 to Jason Erb, and to request that AIG reconsider its wrongful denial of a defense of the referenced lawsuit under the above referenced policies, which were in effect from 2/19/99 to 2/19/02. As

Paula S. Giles
March 3, 2006
Page 2

explained below, the unique facts of this case fall squarely withing the advertising injury coverage afforded under the policies.

Factual Background

The complaint for patent infringement alleges two counts of infringement against numerous car manufacturers, including Hyundai, stemming from two patents now owned by Orion by assignment. Count 1 alleges direct and indirect infringement, and inducement to infringe, the '342 patent, entitled "Electronic Proposal Preparation System." Count 2 similarly alleges direct and indirect infringement and inducement to infringe the '627 patent, entitled "Computer-Assisted Parts Sales Method." As best we understand, the '342 patent is used by car manufacturers in an interactive computerized system where a potential customer can "build" a car on line, with all of the various options, ultimately resulting in a quoted purchase price. The '627 patent is an interactive, on line system which displays parts, and parts related information used primarily by car dealerships (parts salesmen) for the purpose of selecting and ordering automotive parts. This presents the rather unique situation in which the patent itself is part of the advertising process.

The complaint does not specify when the alleged infringement commenced. It simply alleges that the defendants have been and are now directly and indirectly infringed, and induced infringement. However, it does allege that plaintiff was assigned the '342 patent on March 25, 1997 [Complaint ¶ 24] and the '627 patent on November 22, 1994 [Complaint ¶ 49]. Thus, it is possible that the alleged infringements began as early as November, 1994.

Unlike the policies in effect after 2/19/02, the three policies in effect from 2/19/99 to 2/19/02 do not contain an exclusion for patent infringement, and have different insuring language than the later policies. These earlier policies afford coverage for "advertising injury committed in the course of advertising your goods, products or services, but only if the offense was committed in the 'coverage territory' during the policy period. They define "advertising injury" as:

"injury arising out of one or more of the following offenses: . . .

    c.    Misappropriation of advertising ideas or style of doing business; or

294816-1.wpd

EXHIBIT 11    4

Paula S. Giles
March 3, 2006
Page 3

      d.      Infringement of copyright, title or slogan."

To have a "reasonable expectation of coverage," the insured need only show (1) that it was engaged in advertising during the policy period when the alleged advertising injury occurred, (2) that the allegations create a potential for liability under one of the enumerated offenses, and (3) that a causal connection existed between the alleged injury and the advertising. *Hameid v. National Fire Ins. of Hartford* (2003) 31 Cal.4th 16, 22. All three elements are present in this case.

With regard to the first element, it is clear that Hyundai was engaged in "advertising," at least as to the "build your own car" interactive system (the '342 patent). Although the term "advertising" is not defined in the policies, the California Supreme court has held that in the context of advertising liability coverage, it means "the widespread distribution of promotional materials to the public at large." *Hameid v. National Fire Ins. of Hartford* (2003) 31 Cal. 4th 16, 29. It is difficult to imagine a more widespread distribution than one over the internet. The same argument would apply to the '627 patent to the extent that it involves the distribution of the promotional materials to the public at large.

The second element, whether the Orion lawsuit creates a potential for liability under one of the enumerated offenses, is also satisfied. Here, the claims against Hyundai qualify as a "misappropriation of advertising ideas or style of doing business." For example, trade dress infringement under the Lanham Act constitutes a misappropriation of advertising ideas or style of doing business, even though the term "trade dress" is not specifically listed. *Dogloo, Inc. v. Northern Ins. Co. of New York* (C.D. Cal. 1995) 907 F.Supp. 1383, 1389. The simple fact is that the complaint alleges that Hyundai (and others) misappropriated the claimant's advertising ideas and style of doing business by using an interactive system to which the claimant holds exclusive rights. The interactive system was the claimant's advertising idea.

In your letter, you contend that coverage does not exist because patent infringement is not one of the "enumerated rights." This argument fails on two grounds. First, as noted above, the alleged offense does constitute an enumerated offense: a "misappropriation of advertising ideas or style of doing business." Second, unlike the later policies, which contain a specific exclusion for patent infringement, the policies in effect from 2/19/99 to 2/19/02 contain no such exclusion. Had AIG intended to exclude

294816-1.wpd

Paula S. Giles
March 3, 2006
Page 4

patent infringement in the present policies, they could have done so, just as they did in the later policies. The fact that it did not supports an inference that the policies do not, by their terms, exclude patent infringement from one of the advertising injury offenses.

Finally, the third element is also satisfied by a clear causal connection between the insured's advertising activities and the "advertising injury." For a causal connection to exist, all that is required is that there be a patent infringement in the advertising, independent of the sale of the patented product. *Everest & Jennings v. American Motorists Ins. Co.* (9th Cir. 1994) 23 F.3d 226, 229. As one court explained, "the advertising activities must cause the injury, -- not merely expose it." *Simply Fresh Fruit, Inc. v. Continental Ins. Co.* (9th Cir. 1996) 94 F.3d 1219, 1223.

This is exactly what is alleged in the present case. The allegations are that the insured, without consent, <u>used</u> patented software to advertise its own products. It is the <u>use</u> of the patent in the course of Hyundai's advertising activities that caused the alleged harm, i.e., failure to pay licensing fees, not the sale of a product that incorporates the patent. Unlike many of the cases which find no advertising injury coverage for patent infringement for lack of a causal connection, here, the infringement could not occur but for, and is inseparable from, the interactive advertising.[1] The alleged harm has nothing to do with the <u>sale</u> of a patented product. Rather, the alleged harm results from the use of a patented "style of doing business" in the course of the insured's advertising activity. It is analogous to using another's copyrighted slogan to advertise ones products.

Thus, we believe that Hyundai is entitled to a defense under the advertising injury coverages of the first three policies. While you also raise the potential application of Cal. Ins. Code § 533, it does not preclude a defense. *Mez Industries, Inc. v. Pacific National Ins. Co.* (1999) 76 Cal.App.4th 856, 878 [holding that where a denial of indemnification is based on the application of section 533, it does not necessarily follow

---

[1] See, e.g., *Aetna Casualty & Sur. Co. v. Superior Court* (Watercloud Bed) (1989) 19 Cal. App. 4th 320, 328, finding that under the facts of that case, patent infringement could not be committed in the course of the insured's advertising activities because there, "[t]he patentee is not injured because a product incorporating its invention is advertised, but because the infringer, without consent, used or sold a product utilizing a protected invention."

EXHIBIT 11            6

294816-1.wpd

Paula S. Giles
March 3, 2006
Page 5

that no duty to defend exists because section 533 precludes only indemnification of wilful conduct and not the defense of an action in which such conduct is alleged]; *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal. App. 4th 1017, 1032-1033 ["Unlike coverage for bodily injury and property damage, which is 'occurrence' based, there is no requirement for personal injury [or advertising injury] coverage that there be an 'accidental' occurrence. All that is required is that the injury arise out of the conduct of the insured's business. Thus, even an intentional tort . . . may be covered."].

As you know, the duty to defend is quite broad. Under California law, an insurer must defend whenever there is a mere potential for coverage under the policy for any of the allegations of the lawsuit. *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 265. An insurer may refuse to defend only where the complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose Chemical Co. v. Superior Court* (1993) 6 Cal. 4th 287, 295. Thus, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it cannot. *Id.* at 300.

The duty to defend is measured at the outset, and "turns upon those facts known by the insurer at the inception of the third party lawsuit." *Montrose* at 295. As long as the facts alleged in the complaint give rise to a potentially covered claim, there is a duty to defend. All that is required is the bare "potential" or "possibility" of coverage [*Montrose, supra*, at 299-300] and any doubt as to whether the facts give rise to a duty to defend must be resolved in the insured's favor. *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal. 4th 1076 at 1081. More than a "potential for coverage" exists in this case. Indeed, as explained above, the allegations of the complaint fall squarely within the advertising injury coverage afforded by the referenced policies.

Hyundai and the other defendants are represented by Robert A. Cote of Orrick, Herington & Sutcliffe LLP, under a joint defense agreement. Orrick is charging a blended rate of $425/hour for attorneys and $150/hour for paralegals, which is apportioned among the defendants for common work. Hyundai's share is 18% for common work. Work performed for a specific defendant is charged in full to that defendant at the above rates.

Based on the above, we ask that the above referenced insurers reconsider their wrongful denial, immediately undertake the defense of their insured, and agree to

294816-1.wpd

EXHIBIT 11

7

Paula S. Giles
March 3, 2006
Page 6

the retention of Orrick, Herrington as defense counsel under the terms set forth above. Time is of the essence, and we look forward to a prompt response.

Very truly yours,

Terry C. Leuin

cc: Raphael Cotkin
Jason Erb

294816-1.wpd

8

EXHIBIT 1 1